May it please the Court, Counsel Robert Fishman on behalf of Mr. Mier-Garces. As the Court is aware, the parties filed a supplemental briefing in this case late last week, directed towards the question of the significance of United States v. Leal to this case. And I want to start with the question of whether or not the United States v. Mier-Garces is a legal entity. And I want to begin by making a couple points on that question, and then I'd like to move to respond to some of the arguments that were advanced by the government that have nothing to do with Leal, really are much more in the nature of a surreply brief. Starting with Leal, the government's position is that Puckett, a case from 1982, continues to establish the rule in this circuit on how a court is to go about evaluating a double jeopardy challenge to successive conspiracy prosecutions. And that is the same evidence test, and the government says it still applies. Now they acknowledge that the court in Leal did not apply the same evidence test, and I think that's clear on the face of it. And I would go one step further and note that not only did the court not apply that test, it did not cite Puckett for any principle of law. But it cited Blockberger. Because the question of Puckett's applicability was squarely before the court, and I will grant you that implicitly it rejected the application of that case, but it rejected it nonetheless. The other point I want to raise about Puckett is I think it is not a fair reading of the case to say that it establishes that the same evidence test actually applies in this context. And I say that acknowledging that other courts, other divisions of this court, have disagreed with me on that point. But the fact is, Puckett says Blockberger's same evidence test applies to double jeopardy challenges. And it goes on to say, of course, there's a growing concern in the law that that test really doesn't work in the context of successive conspiracy prosecutions. Is our circuit the only one not to step up and say that the totality of the circumstances applies? I believe that it is, Your Honor, although I cannot say that I've done a nationwide search on that. I can say I've done a lot of research and I've not come across any circuits that say the same evidence test applies in any form or fashion in this context. When you look at Mintz and you look at Sasser, even though they reference Blockberger, when you get down to the analysis, they look at factors that are very consistent with the notion of looking at interdependence and looking at common purpose. So if you look at the substance of those cases, it's not clear to me at all that they're doing anything that is not different than applying the totality of the circumstances. I agree. And I think it's... And the same in Leal. I think it's... And the same in this case, by the way. The district court walked through, nobody even raised interdependence, but the district court did and talked about it. I agree with all of that. Well, if you can agree with that, but it seems to me that creates a problem for you. Because even if we draw a line and we can harmonize our prior cases and make them... And their expression in full form is in Leal now, the core of all of those cases is a showing of interdependence. And you can combine that with common objective purpose interdependence. That word does not even appear in your opening brief. And it appears in a very small summary fashion in your reply brief. It seems to me if we're applying this principle, you're dead. I mean, I just don't see any basis to do anything with your argument then. The... I think Leal makes pretty clear, and it says at page 9 of the opinion, that the question of interdependence is a question of whether there's a common goal or purpose. That is the essence of interdependence. I disagree, Judge Holmes, that the word does not appear in our opening brief. In fact, it does. And what I will stipulate to... Really? What page? I did a word search. I did not find it at all. I mean, we cite the... It's... I believe it's page 7. But here's... And I'll quote it. It's a cite from a case. Here's the more significant... It's a cite from a case. Here's the more significant point. At pages 22 to 24 of our opening brief, we discuss at length, factually and legally, the common purpose and common goal of this conspiracy. And I will concede to your honor that the subheading of that argument is not interdependence. But the fact that I labeled it in the way that, say, the Seventh Circuit labels common purpose, is not to say that the argument has not been argued. It was argued at great length. And those cases that I cite, it's four pages of our opening brief. It is all about common purpose and common goal and, therefore, interdependence. The government has not said we've waived this argument. They said we didn't argue it. And I think that is just demonstrably wrong. What you can say is... Exactly what is the difference between saying you didn't argue it and it's waived? I mean, if it's not asserted, it's not there as waived. Sure. I agree. But it is there. All right. To your point. Okay. If I understand you, you're saying that the substance of a common purpose argument exists in your brief. I do take the point that in Leal and these other cases, common purpose is, one could argue, at least part and parcel of and central to the interdependence question. Why isn't it still a problem? I mean, you know, labels matter. I mean, rubrics matter. And when you're making this common purpose argument, it has to be towards a goal of showing interdependence. And that just hasn't happened. I mean, you can say you're not persuaded by the argument that I've made in the opening brief and in the reply brief. Okay. I think you cannot say the argument has not been made. And I can stand here and read it to you, but I think that would not be a fruitful use of our time. Right. So the question then is we know from Leal that common goal and common purpose is the centerpiece, the focal point of interdependence. We have argued the question at length in our briefs. And I think the real question then becomes, there's really two of them. When you talk about common purpose and common goal, do you insist that all of the people involved in this enterprise are aware of one another and they're joined in a united vision that they all share and understand that they all share it? Or does the principle apply that in large organizations, individuals are presumed to know that there are other people involved in the endeavor that they are completely oblivious to? They have no idea who these people are or how they operate. And Dickey, Nunez, Watson, Leal, all 10th Circuit cases, they all say, they all invoke this principle that in large organizations, you just can't expect everyone to be aware of everyone else in order to establish that they're engaged in a common purpose. Let me ask you this. On the common purpose front, Leal organized the analysis by saying that there is no direct evidence of common purpose. Therefore, it looked at the timing, the location, the personnel. On the personnel front, at least I have not seen anywhere where we're clear on exactly who this El Senor or El Munoz person is. And you haven't given us any evidence to suggest that there were at least two people in both conspiracies. Yeah. I agree that prior to trial, when my client is being interviewed by the agents after his arrest, he refers to El Muneco as the macho in Mexico. And at trial, the other witnesses pretty consistently referred to the person as El Senor. So I agree that there's some confusion on that question. But I think it doesn't matter. And the reason I say that is because the evidence is consistent in this case and both the Western District of Texas case, that what you have is a drug organization that is based in Chihuahua, Mexico, that imports drugs to El Paso, where Mr. Meyer Garces does his M.O. He picks it up at the Walmart. He puts them in secret compartments, returns the car. They come back with cash. He does the same thing in reverse. So you know that there is somebody, maybe it's two people, maybe it's one, maybe it's five, in Mexico who are really the source of the narcotics. So you really get down to there's a source in Mexico that comes through El Paso. It's distributed in the United States. And whatever happens among and between and with and through this overarching goal, conspiracy, is one big conspiracy. That's pretty huge. Well, I mean, it is big. And the evidence, it's undisputed, is the conspiracy is the importation of admittedly very large amounts of Where's the agreement? Don't we have to have an agreement? Well, it's the people who agree to act as couriers. It's obviously Mr. Meyer Garces and the people in Mexico. And the people in Mexico, like who? El Senor? Maybe. The government couldn't tell. You needed to establish that. I mean, that's your burden of proof in this context, to establish some basis on these factors that we ticked off, I ticked off, including personnel. You need to make some effort to clarify that point. You say it's not a distinction that matters. Well, it does matter because he could have been in conspiracies with five different people in Mexico to move drugs into the United States. That would not make them the same conspiracy. If, however, El Senor and El Mineco or however you pronounce it, if that person was the same person, that would be a distinction with a difference. I mean, all I could do is rely on the evidence that the government generated through its investigation. I cannot go to Mexico and track these people down myself in order to make a double jeopardy claim. And I think the problem with saying, look, we know one thing. The evidence establishes a Chihuahua-based, we'll call it a cartel, in Mexico, sending drugs to my client in El Paso, who then distributes it further to destinations throughout the United States. And if the rule is, because you can't identify with specificity the people in Mexico, you cannot establish commonality of personnel, and therefore you cannot establish a double jeopardy violation, it encourages the government to do less in investigating these claims. Certainly disclose less in the course of indicting someone. They don't need to know who the source of the narcotics are in Mexico in order to convict my client and Mr. Lucero and Ms. Moda. Well, but your client would know who he was dealing with, would he not? And since it's your burden to establish this is double jeopardy, you could just say, hey, this is the same thing that happened in Texas. I agreed with El Senor to do this, and now I'm agreeing with him again. Well, if that's the standard, then- It's just the same conspiracy. If that's the rule, then I think it's problem solved, because my client is clear and consistent throughout. El Muneco is his guy, always, the only guy. All of his cocaine comes from Mr. Muneco, all of his instructions come from him, and all the cash he receives goes back to him. And did your client, and you're saying he was clear, he was clear in what context, and did he tie El Muneco to El Senor that is talked about in the Colorado case? He does not refer to El Senor. And what he's clear about, this is Exhibit D, it's both Trial Exhibit D and May 26th Hearing Exhibit D. That is the report of investigation, which is my client's really full and complete confession to all of this. In Texas, that's that. It's in the Texas arrest, right? Right, yeah. He admits to everything in the Colorado case, El Muneco, how this works with dropping the cars off in the secret compartments, Ms. Moda, Jack Lucera, all of them. He confesses to it all, and he ties it all to El Muneco. And that, I think, Judge Briscoe, is your point. You have those two. That's why we argue these are the core conspirators. And the cast, the rotating cast in an organization like this, the law is pretty clear. It makes no difference. I mean, these people are getting arrested left and right, and they're constantly enlisting new couriers to move this stuff. So the co-conspirators, that doesn't matter, that that's a shifting group of people? It doesn't. Under the law, no, it does not matter. I mean, we cite a bunch of cases saying, you know, of course in an organization like the street-level dealers are going to come and go. It's the core. It's the constants. Do we look at where the drugs are going to be delivered? I think destination is one of the things, but we also cite many cases saying, and this court has recognized, just because you have some shipments going to Denver and some going to Albuquerque and some going to Waco, does not create three separate conspiracies. If it did, every large criminal conspiracy could be sliced and diced a million different ways. Destination, buyer, courier, and I'm out of time. Isn't the only thing that was argued to the trial judge in terms of the double jeopardy claim, that they were sold in different cities, the drugs were sold? I mean, it was just a pure geographic argument, and I hope you'll indulge me. Oh, sure. Go ahead. The argument in district court was not well-developed. I will grant you that, and you're correct. No argument made on interdependence. I will say two points about that, if I may, though. The first is exhibits D, S, and O are the evidence that establish that both of these prosecutions involve the same conspiracy. At page 124 of the May 26th hearing, the judge said to counsel, look, I've read all your exhibits. All of them have been admitted. I'm familiar with all of them. So the argument, I will grant you, was not effective. I think the question we have now is whether the evidence before the court was sufficient, and I think that it was. Thank you. Good morning again, and may it please the court. Carl Schock representing the United States. However the applicable test is framed, Leal makes clear that two conspiracies are not a single offense for double jeopardy purposes, unless the defendant proves interdependence and the existence of a common unlawful goal. Leal also makes clear that the district court's finding on those points is reviewed for clear error. Here, the district court found that the defendant failed to show that the two conspiracies were interdependent, and it also expressly rejected the defendant's argument that he makes on appeal, that the two conspiracies were part of some larger operation. The court stated that the evidence failed to establish that point. But the evidence, I mean, the government uses the term gatekeeper to talk about the defendant, and that, as I understand it, is that he was the point through which all the drugs from Mexico were coming in. And if you look at the documents from the Texas conspiracy case, it's the United States who says that the purpose was to transport the drugs to destination cities throughout the United States. So we already know that that Texas conspiracy was not just limited to delivering drugs through Mexico to Texas. It's true that the Texas conspiracy references a larger operation. It doesn't specifically reference whether the Colorado conspiracy is part of that larger operation. And perhaps from all of that and all of this other evidence, perhaps there may have been permitted an inference that there was a larger operation. And then you add the other evidence, which is that Mr. Meyer-Garces states is pretty consistent that his supplier is the same supplier all the time in his gatekeeper role. He calls him, I think, El Senor. But it's not like he has six different people in Mexico, and sometimes he's importing for that person and sometimes another. And there was testimony, I think, from Ms. Mota that she was working for the La Lina cartel. I mean, this is helpful evidence for the defendant, isn't it? Yeah. Yeah. So a few points on that. First of all, I want to be clear that the testimony from Meyer-Garces, the testimony from Ms. Mota, that all came at trial. And so that wasn't before the court when it was ruling on the motion to dismiss here. The other point is if there was a larger operation. So I think there are two points here. First of all, the question is the court here did not find a larger operation. And so was that clearly erroneous? I think that what you're saying may suggest that the court could have found a larger operation, but it did not. And I don't think it's clearly erroneous. And could I just interrupt one second? Yeah. Yeah. Implicit in what you're saying is that we are limited to the evidence that was before the court before it ruled on the motion, right? And there is case authority to that effect. In the specific double jeopardy context, I don't have case authority for that point. I think that I'm relying on the point that when a court rules on a motion, the court should look to what's before the court when it rules on the motion. To the extent we're going to consider things that happened at trial, I think at a minimum that would have to be reviewed for plain error, and there's no plain error that's been argued here because he didn't renew his double jeopardy. That's really the question. There wasn't a motion to acquit based on double jeopardy? There was not based on this double jeopardy point. It was dropped after the motion to dismiss. The other point that I want to make, even if the court were to disagree and somehow find that the finding as to a larger operation was clearly erroneous, there's a second point that needs to be made here, and that's that these conspirators are part of that larger operation. And Leal, this court talked about, and it cited the kind of general principle that where there are different spokes, there's only a single conspiracy if there's a rim that connects those spokes. And there hasn't been any evidence here that the conspirators in Colorado and the conspirators in Mexico, even if there was a larger operation, that they had agreed to that operation, that they were part of that operation. And I think there's an important point here with... Well, didn't Ms. Mota, I may have her name wrong, I mean, she understood she was working for a big Mexican drug cartel. But there's no indication she knew anything about what was going on in Texas. There's no indication at all that these Colorado conspirators... Well, once she knows she's working for a massive drug cartel in Mexico and they've got a pretty, a system that seems pretty well oiled in how they're doing things, do you think in the reasonable implication, I mean, we have cases that say when there's large quantities that you assume they know it's broader than their own activity. And here we're dealing in kilos, not grams. Right. And what those cases say, and there are cases that the defendant cites, and they arise in the sufficiency context. And the point that those cases make is that a fact finder may presume where there are a bunch of large buyers, they may presume from that that there is a larger operation. And they say, therefore, the jury can make that conclusion. Here the fact finder is the judge. And so, yes, perhaps the judge could have inferred from all that evidence, again, setting aside the fact that that evidence didn't come in until after trial. But perhaps the court could have inferred that. But we're dealing with factual findings here. Let me interrupt you. Don't we have cases on conspiracy where the court, the appellate court, is looking at evidence that came in at trial in determining whether there was interdependence? Yes, when there's a double jeopardy objection made at trial. Okay. I think that the point here is that there was no double jeopardy objection made at trial. And on your sufficiency point, if I understand that point correctly, what we're talking about is when you have the individual defendant and you're trying to tie them to the larger conspiracy, and the point is they could presume that they were part of the larger conspiracy by virtue of the volume of drugs moving, right? They could presume that. I mean, that's the argument. But, I mean, that's the context in which this comes up in. It's not this sort of double jeopardy. Exactly. So if the government here had charged this supposed larger conspiracy that we're talking about, perhaps this evidence could have been sufficient evidence to support that larger operation. And to convict mules or mid-level people being part of that larger operation. Right. Right. So it could have been sufficient, but that's a different question from whether the defendant has established that. And, again, here where we have a finding by the district court to the contrary. And I think, I mean, this idea of looking toward this larger goal at a certain level of generality, I think that can lead to, I mean, take Leal, for example. Surely there was some larger goal of that defendant to distribute drugs for profit, which is the way that the defendant describes the goal in his reply brief here. But that didn't prevent these two separate distribution conspiracies from being separate offenses. So the question, the ultimate question is, is there one agreement or are there multiple agreements? Well, one thing that could have played on that is the notion of whether El Moneco or whatever was the same person as El Senor. I mean, in your brief, footnote three, you say that El Senor was what? There's no evidence El Senor was involved in the Texas conspiracy. I mean, is there anything in the record to tell us whether those are the same people? Not that I know of. It's confusing to me, and I've been through the record and I've tried to figure that out. I think there's some places in the record suggest they're different people and some places in the record suggest that they might be the same people. But what is clear, El Senor was never mentioned at the hearing, at the hearing on the motion to dismiss. El Moneco was mentioned a couple times, and he was mentioned in a couple of the exhibits. But, again, I think that still all we have here is perhaps, as the court acknowledged, I mean, the court acknowledged maybe there is this other individual involved, but the court actually said its actual finding was that there were no common conspirators. And the testimony at the trial, the closest actual testimony got, or I'm sorry, at the hearing, the closest the testimony got on this point was testimony from the agents that said that none of the Colorado conspirators were involved in any way in the Texas conspiracy and vice versa. So there was that specific testimony that is cited in our brief. Well, the defendant was. The defendant was involved. Right, right, with the exception of the defendant. And Lael does say that one common conspirator certainly does not make them the same conspirators. But at trial, Ms. Mota testified that she worked for El Moneco, and she also testified that Mayer Garcia worked for El Moneco. It appears that there's at least her testimony where she thinks they're the same person. Correct, correct. Perhaps that testimony, again, setting aside that's at trial, but perhaps that testimony, maybe that would show that Moneco was part of the Colorado operation. We still don't have any evidence that Ms. Mota was aware of the Texas operation or was part of that Texas operation. So even if Moneco and this defendant, Mayer Garcia, were both parts of these two conspiracies, so even if you assume Moneco was part of both, that does give you two common conspirators. But even two common conspirators, that doesn't necessarily make them the same conspiracy. For example, it's not the case that once we get to two, all of a sudden they're the same. The ultimate question is still, was there one agreement or were there multiple agreements? One of the things that Leal looked at in discerning common purpose was time, the timing, and also we talked a lot about personnel, the timing and geography. There are a lot of ways to view that, but it seems to me one way to view it doesn't really help you because there is an overlap here of the one day in the broader conspiracy charge in Colorado. Also, one could argue on the geography point that in both alleged conspiracies, the locus was in that area down in Texas and over the border. So speak to that. Why aren't those two factors in the common purpose analysis actually not helpful to you? I mean, why is that? On the timing point, obviously there is this one day overlap. I would argue that one day out of two and a half years doesn't make it the same conspiracy. But the more important point on timing that I want to make is that the Colorado conspiracy as charged extended for six months after the Texas indictment. This court held in Rodriguez-Aguirre, which is cited in our briefs, that two offenses can't be the same offense where one continues after the indictment on the first because otherwise once a defendant is indicted, he can continue that same conspiracy without any fear of being indicted for further unlawful conduct. So I refer the case to that Rodriguez-Aguirre case. On the location point, yes, you could look at these conspiracies two different ways. You could look at where his conduct was, and certainly his conduct was in the same location. But if you look at the context of the cases as a whole, everything that was at issue in the Colorado case was stuff that occurred in Colorado or on the way to or from Colorado. So it dealt with a stash house that was located in Thornton, Colorado. It dealt with surveillance at a hotel that was located in Denver, Colorado. It dealt with Ms. Moda, who was driving to and from that stash house or that hotel in Colorado. On the other hand, the Texas conspiracy dealt entirely with actions that occurred on the way to or from New Mexico. So it dealt with the dropping off of the car to be loaded with drugs in El Paso and then the delivery of those drugs to New Mexico. So, yes, although there's some overlap in the defendant's conduct, all that means is that the defendant was committing these offenses in the same place. But the offenses themselves involved much different locations. But in the Texas conspiracy documents that are filed by the government, the government indicates that that conspiracy was for the purpose of transporting the drugs to destination cities throughout the United States. So even the government recognized that although the specific wrongful conduct that they observed and then based the charges on all happened in one geographic area, that even the government recommended that this distribution scheme was not limited to Texas. Yeah, correct. There was that general statement. Everything else that went along with that plea was very specific to New Mexico. There was that general statement that is in the plea. I don't think that alone is sufficient to establish that there is this larger operation or that the Colorado operation is part of it. But I think that the fundamental point here is that it was the defendant's burden to show and the district court made these factual findings. And I don't think the record here compels the contrary conclusion by the district court. Were the charges different in the two places? Texas had a different charge. Well, they were both under the general drug conspiracy. I can't remember, 371, I think. Possession. One was, so the Texas one was possession with intent to distribute. The Colorado one was distribution and possession with intent to distribute. 846. Correct, yeah, yeah. Thank you. So, therefore, the government asks that the judgment of the district court be affirmed. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.